Mr. Breskin for the appellant. And have you reserved any time for rebuttal? Yes, I would like to reserve three minutes, please. Go ahead. I am Lawrence Breskin. I represent Randy Pearce, who is the plaintiff and the appellant in this case. This case focuses upon   the pension plan's decision to tell its employees that you do not need to be actively employed at retirement to be eligible for a supplement. However, you must retire and begin receiving pension benefits within five years of your last day of work at the company in order to receive any supplements for which you are eligible. Now, the rest completely upon a finding that that sentence, which I just quoted for you, informed participants that they were not entitled to a supplement if they were not employed. Neither the district court nor the pension plan goes through any, points to any other language in the summary plan description on which they rely to inform participants that they must be employed. And neither the district court nor the pension plan go through any analysis of how the phrase you do not need to be actively employed informs the participant that they must be employed nor do they go through any analysis explaining how the phrase, however, you must apply for benefits within five years somehow notifies the participants that they must apply for supplemental benefits before their employment ends. Rather, the pension plan and... What about the use of the word retirement in that summary plan description? Is there any place that the term retirement is defined? I don't have an answer for that. Does retirement in this context mean retirement from the company? Well, I don't think it could change anything because in this case Randy Pierce retired within days after his last day of work for the company. Did he retire or was he terminated? His employment was terminated. Well, his employment was terminated and then he retired. How do you retire after your employment is terminated? If your employment terminates for some reason when you're in your 30s, you obviously are not going to retire. You retire by submitting an application to the plan for retirement. A company submits the application. Okay, so you're saying retirement is basically the act of in effect requesting retirement benefits under the plan? Yes. So a discharged or terminated employee can still retire because retirement would seem to me to suggest that one has to be actively employed in order to Now, I know there's this language in here about the vested terminated participant, but it seems to me that retirement would have to mean that one would have to be employed in order to retire. You know, one might be on disability leave or something like that, but that's not a terminated employee, but if one is terminated, if their relationship with the company is severed, then how does one retire? Well, the phrasing doesn't say you need to be actively employed at the time you retire from the company or at retirement from the company. It says you must be actively employed at retirement, or you do not need to be actively employed at retirement. That certainly implicates that there must be ways that at retirement you could be something other than actively employed. Such as an employee on long-term disability, an employee who's on an extended leave. One would not be actively, but the relationship is still intact. ... I don't know how you would then describe the employee who has terminated, who's made the decision, I'm quitting. I got a better job offer, I'm going someplace else, and makes that decision at their 30s, and then applies for retirement and begins receiving retirement benefits. How do you describe that person and what that person is doing in relationship to the plan? What the person is doing in relationship to the plan is retiring. He is submitting an application for benefits that's at retirement. What other meaning could there be for that person? And the plan actually refers to that someplace, right? Well, the argument that the key words were at retirement was never raised below in this brief, and so I know Bill is much more familiar with the details of the plan, but I  definition of retirement. Going back to your argument, we know if there's a conflict, the summary description trumps, but what if there's an ambiguity in the summary plan that is clarified by the plan terms? There are two responses. The first is, this isn't a situation where there's any ambiguity. This is a situation where they simply left out a disqualification. This didn't result from any difficulty in translating a complicated actuarial formula into layman's terms so that someone could understand it. This disqualification can be stated in less than 10 words. Best Determinated Participants are not eligible for a supplement. There was a decision made not to include that in there, but beyond that, ERISA Section 102A requires that summary plan descriptions be produced which are sufficiently accurate and comprehensive to inform participants of their rights and their obligations under the pension plan. In ERISA 102B, there is an itemization of many of the items which must be in a summary plan description, and that includes circumstances which may result in disqualification. Congress, when they wrote the requirements for a summary plan description, wanted to be sure that limitations and disqualifications were clearly stated in the summary plan description, and as a result of that, the courts have regularly found that where a disqualification is simply excluded, it isn't included in the summary plan description. That's a conflict which rises to the level of making the summary plan description insufficient to meet the requirements. But a lot of those cases on which you rely were pre-Cigna, were they not? Yes. Alright, so under the Supreme Court's decision, we're not just talking about looking to see if something's missing or not, we're looking to see whether or not there are appropriate, equitable remedies that a court could provide. So how do you establish that under 502A3 that you can actually recover? The key is understanding Randy Pierce's reliance. In October of 2008, Chrysler was in terrible financial condition with its six months of going bankrupt. They wanted to reduce their payroll, so they were offering a buyout, which included an offer to Randy Pierce. He was actively looking at whether to retire. He asked the pension plan service provider to determine what his pension would be. On the day he was terminated, he was asked to and turned in his decision whether to accept that buyout and retire, or whether to continue with employment with the company. We know that he read the summary plan description, because when he got his pension benefit check six months after leaving the company and retiring, he found that the check was too small, and when he contacted Benefits Express and they told him it's because you are not eligible for supplemental benefits, Randy Pierce immediately responded by email, show me where in the documents you have given me it says that. Don't you, in order to have to establish the right to this equitable relief, which would be traditional reformation of a contract, because the summary plan description can't form a basis for a contract action, so you have to be pursuing under the plan. Don't you have to establish that the summary plan didn't just omit something, but there was fraud? Well, but the fraud which the court has recognized is that the pension plan knew the truth, knew what its plan said, and knew what was in the summary plan description. In the Blomaker case, which cited by both of us is establishing the requirements, the court says Blomaker established fraud by showing that the plan made a misrepresentation and it knew the truth. There's no requirement in the fraud that there be a bad motive or there be malevolence. It is sufficient for the plan to know that it's made a decision not to include something which is essential in the summary plan description, and that they intended the participants to rely on what was in the summary plan description, which is implicit because ERISA requires that the summary plan description be accurate and comprehensive. So you believe that a mere omission could rise the level of fraud? Yes, that's what Blomaker said, and no case that I've seen has required that there's a need to prove that the pension plan was acting under a bad motive and deliberately attempting to misrepresent the situation. And did your client know he was going to be fired? Well, obviously not, because the buyout offer offered him $50,000 plus a $25,000 car voucher, which he signed away when he turned to the rejection. If he had known he was going to be terminated, he would have simply accepted that and gotten those extra benefits, which are gone. But isn't that the event that made the difference in his decision, as opposed to the terms of the plan? No. What made his decision was his belief that nothing that Chrysler could do, nothing that happened in the bankruptcy, nothing that the pressures that might cause him to lose his employment could result in him losing his supplemental benefits, that those supplemental benefits he had earned, he was qualified for, if he retired right then in October, he could get them, or if he retired later after something bad happened because of the Chrysler bankruptcy, he would still get them. When he read the summary plan description, there was no way to realize that any circumstances could cause him to lose the supplemental benefits, which he had already earned. If we agree with you that the lower court did not properly analyze the equitable arguments that you're making, do we have to remand? The court never really reached the equitable argument. My concern is that this case has lasted for five or six years, and it's been remanded once to the plan to review it, and we're all anxious to get an answer and a final answer so we're through. It was October 2008, it's five and a half years, but Judge you're correct. The district court made its decision based on a finding that there was no conflict, and so it never reached the equitable arguments. Thank you. Good morning, Your Honors. William Altman on behalf of the Chrysler Group LLC Pension Plan. I will try to be brief. Judge White, I think in my mind you hit exactly upon what this case is, and that is whether or not the pension plan clarifies the terms of the SPD. In the Lipker case, which both Mr. Breskin and I cite, the Sixth Circuit held that silence in the SPD regarding a term that the plan defines more explicitly does not make out a conflict. Citing Amara, the court explained the reasons for this, and that is the SPD is exactly what it stands for, a summary of the pension plan. There's no way that the summary can contain all of the terms. It's interesting because when you read the summary plan, you only have one interpretation. Anybody reading that plan would come to the same conclusion that the plaintiff came to, and it's only after you read the actual plan that you realize that the interpretation is incorrect. It's not so much, and it's true, you can reconcile the two, but does it matter that any reasonable person reading it alone would come to a contrary conclusion? I don't know that I agree with you with any reasonable person because it does have the word actively in there. In normal contract interpretations, you have to attribute weight to every word. Well, probably a lawyer would not. Fair enough, Judge. When I read that, that's obviously what I gleaned from it. It says actively. What does actively mean? So we look elsewhere to figure out what actively means, and that's tracking the Lipker case that says when a term is clarified, then there is no conflict between it and the summary plan description. But I guess I'm still having a difficulty with this notion that all you do is look to the issue of a conflict as opposed to the potential for a material omission, because under Cigna, we're not supposed to just be doing this conflict or not analysis anymore, are we? Cigna, I don't believe, directly addressed the issue. It's Sixth Circuit's interpretation in Lipker and subsequent cases that took it to that next step. I mean, there's no question that Amara says that you cannot sue to enforce the terms of the summary plan description, but I don't believe that case addressed conflict or no conflict. But it did say that what you're supposed to be engaging in is an equitable analysis, right? It said potentially. I don't think Amara went on to hold for sure that those equitable remedies were applicable. I read that more as dicta. They weren't applied in that case. It was remanded for determination of whether or not any of those remedies might be equitable estoppel. Why wouldn't a material omission from the summary plan that the plan administrator is obligated to provide by law, why wouldn't that form the basis for equitable relief? Potentially it could. It's my contention that there is not an omission here. I mean, the Lipker case described the SPD at issue there as incomplete. That was the word that it used. But it said that that SPD could be read although it was incomplete, it was consistent with the terms of the pension plan and therefore there was no conflict. So Lipker is looking at conflict. And Judge Donald had a case just last July, Engelson v. Unum Life, where she employed the same analysis. And in that case, the summary plan description failed to point out that the pension plan itself had a shortened contractual limitations period. Applying Lipker and quoting Amara and all the reasons that summary plan descriptions can't have every term in them, Judge Donald... But if somebody wanted to know, okay, how long do I have to take action? And they looked at the summary plan and it wasn't in there, then they would know that they don't have their answer and they have to look further. Here if somebody is saying, well, what's my entitlement to these benefits, they think they have the answer. Well, I guess it depends on the person reading it because it says I'm not actively employed. I mean, Chrysler these automotive companies tend to have more employment statuses than your average employer does. I suspect everyone that works at Chrysler knows of the innumerable different employment statuses. I mean, they've got leaves of all types of variety, union leaves, medical leaves, disability leaves, indefinite status leaves. So the status of employment is a term that is well ingrained with folks that work at these companies. So when they read actively employed, they understand credited service months. These are terms that are baked into every benefit they get. So when you and I at least in a law firm, we don't get anywhere near those type of benefits. So to say that you're either employed or not employed is a term that would make more sense because we don't have 14 different types of employment status. You either work here or you don't. That's not the case in the context of the automotive workers. So actively employed should have signaled him that he needed to be actively or not actively employed or employed in some status rather than not employed at all. And to take it a further step, it is, we're getting a long way from the record, but it's a true sign of that employment status when you walk around these facilities and you see the different badges on people because you can tell exactly who is actively employed by the color on their badge as opposed to a vendor, a contract employee, a subcontractor. People are labeled walking around these plants as to their employment status. So actively employed is a term that should have meant something to Mr. Pierce and at the time that he submitted his employment application he was not. He was not employed in any status. The terms of this SPD track the terms in LPCR. At best the SPD is incomplete, just like LPCR. And just like LPCR there isn't any conflict here. And just like Judge Donald's provision in Engelson v. Unum Life where it says that you don't have to be actively employed, the pension plan clarifies it. And Mr. Pierce has made several arguments that the pension plan was not available to employees or they couldn't get it. That's just simply not true. It's not in the record. All they have to do is ask for it. I've pointed out in our briefs that throughout the summary plan description it says if you have any questions or you're concerned about any terms in this or if any term conflicts with the pension plan, please see the pension plan document itself. Now I'm not suggesting that that somehow cures any defect with the SPD, but it certainly puts the employee on notice that there is another document out there that is controlling. And I don't think Mr. Breskin can seriously suggest that his client ever asked for the pension document itself and was denied it or we would have another claim for $110 a day for failure to produce that pension plan document. And unless you have any other questions, I will leave it there. Thank you. Thank you, Judge. Your Honor, I'd like to respond to two things. One is, in regard to LPCR, the language which the pension plan is referring to is dicta because the holding in LPCR was that the SPD and the plan did not meet anything, did not make any difference. The court said, yet again, the omission actually has no effect in the end result. Whether one uses the amount that was in the pension plan or the amount that's calculated under the SPD, you end up with $1,469 as the reduction. So that any difference which existed didn't result in any dollar change. So the LPCR decision wasn't based on a finding that an omission or something else wasn't in the SPD. It was founded on the finding that whether you applied the SPD or you applied the pension plan, you reached the same result for this pension. But doesn't the LPCR case actually say that as long as what the omission does is simply clarify the terms in the summary plan description, that then the omission is innocuous? If it just adds more details. But it should be recognized that LPCR was dealing with one of those complicated formulas and trying to translate that into layman's language as opposed to a simple disqualification which could have been stated in a few words. And it also doesn't undermine the position that that language wasn't necessary to LPCR's decision. LPCR's decision was based on the factual finding that in fact there was no difference under the SPD or the plan document. They both ended up with the same dollar amount. Well, how do you respond? Your friend on the other side argues that as in LPCR, all we're talking about is plan language that helps clarify the term actively. Because in this case, if you apply the language under the SPD and no other language appears as eligible and gets the supplemental benefits, it is only by looking at the language in the plan document that you have any inkling that Pierce does not receive supplemental benefits. If you exclude the pension plan and read the SPD, there isn't any ambiguity as you read that. As a normal person reads it, they're sure. As long as I apply within five years, I'm going to get those supplemental benefits. Now the other topic that I want to respond to is the assertion that Pierce could have gotten the actual plan document. In October of 2008 when he asked for his estimates, those estimates came and they repeatedly said four or five times if you have any questions about the plan, look at the summary plan description. It didn't say look at the summary plan description and the pension plan or the pension plan document. It said look at the summary plan description. And it further said that if you need more information, go to the website. And on the website the only document on the website was the summary plan description. All it would have taken is put in one button on the website with a PDF of the plan document in order to make it available and the pension plan made the decision not to do that. Then when Pierce got his first pension check and he challenged Benefit Express, please tell me where in the documents you have provided to me is written what you have said. They didn't provide him with the plan document. They gave him another copy of the summary plan description. Pierce did not see the plan document until he contacted an attorney to begin litigation and I knew that the only way you can require that a plan provide you with the plan document is to send a written request, not to the benefit services provider, Benefit Express, but to the entity who is designated as the plan administrator under the plan. And only after I wrote a letter to them did they give us the plan document. The plan document is not readily made available to participants. The participants are directed to the summary plan description. Thank you. Thank you both. The case will be submitted.